UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ARTHUR REED, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:15 CV 1843 ACL |
| | ) |
| TROY STEELE, | ) |
| | ) |
| Respondent. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Arthur Reed for a writ of habeas corpus under 28 U.S.C. § 2254.

### **I. Procedural History**

Reed is currently incarcerated at the Eastern Reception, Diagnostic and Correctional Center in Bonne Terre, Missouri, pursuant to the sentence and judgment of the Circuit Court of St. Louis City, Missouri. (Doc. 15-4 at 129-32.) On July 7, 2009, a jury found Reed guilty of second-degree burglary, felony resisting arrest, misdemeanor stealing, first-degree trespass, and second-degree property damage. (Doc. 15-1 at 86.) The court sentenced him as a prior and persistent offender to an aggregate sentence of twenty-four years' imprisonment. *Id.* at 107.

In his direct appeal of his convictions, Reed raised four claims: (1) the evidence was insufficient to support his conviction for resisting arrest; (2) the trial court plainly erred in allowing the State to present hearsay testimony; (3) the trial court erred in overruling Reed's motions for judgment of acquittal at the close of the State's case because the State failed to prove beyond a reasonable doubt that Reed was guilty of burglary and trespassing; and (4) the trial court erred in denying Reed's motion for a new trial because the prosecution withheld favorable material evidence from the defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. 15-2.)

1

On February 8, 2011, the Missouri Court of Appeals affirmed the judgment of the trial court. (Doc. 15-5.)

Reed filed a *pro se* motion for post-conviction relief under Rule 29.15. (Doc. 15-6 at 6-13.) After appointment of counsel, an amended post-conviction relief motion and request for evidentiary hearing was filed. (Doc. 15-7 at 3-25). The amended motion raised the following claims: (1) trial counsel was ineffective in inducing Reed to give up his right to testify; (2) trial counsel was ineffective in failing to introduce the entire 911 tape; and (3) the State failed to disclose evidence to Reed in violation of *Brady*. *Id.* The motion court denied Reed's amended motion after holding an evidentiary hearing. *Id.* at 149-62.

In his appeal from the denial of post-conviction relief, Reed argued that trial counsel was ineffective in failing to play the entire 911 call. (Doc. 15-8 at 22.) He also argued that the State committed a *Brady* violation. *Id.* at 24. The Missouri Court of Appeals affirmed the decision of the motion court. (Doc. 15-10.)

Reed filed the instant Petition on December 4, 2015, in which he raises the following grounds for relief: (1) the evidence was insufficient to convict him of resisting arrest; (2) the evidence was insufficient to show he committed second-degree burglary and the misdemeanor charges of trespassing, stealing, and property damage; (3) trial counsel was ineffective for stipulating with the State not to play the entire 911 call for the jury; (4) the State violated *Brady*; (5) the Missouri Supreme Court erred in denying his State petition for habeas corpus under Missouri Supreme Court Rule 91; (6) the "cumulative effect of all the alleged errors" warrants habeas relief; (7) trial counsel was ineffective for failing to request new counsel at a post-trial hearing; (8) trial counsel was ineffective for failing to object to the prosecutor's use of an evidence envelope at the post-trial hearing; (9) trial counsel was ineffective for failing to object to the admission of Reed's clothes and the hammer used in the burglary; and (10) trial counsel was

ineffective for failing to impeach Officer Tesreau concerning the evidentiary chain of custody. (Doc. 1.)

Respondent filed a Response to Order to Show Cause, in which he argues that Grounds Five and Six are not cognizable in federal habeas review; Grounds Seven, Eight, Nine, and Ten are procedurally defaulted; and all of Reed's claims fail on their merits. (Doc. 15.) Reed then filed a Traverse, in which he provides further argument in support of his claims.

## II. Facts[1]

On August 25, 2008, Jerry Warden saw Reed attempting to enter an unoccupied home (the first house). When Reed was unable to force the door open, he entered a second unoccupied home under renovation (the second house) and left approximately 30 seconds later holding a hammer. Reed then used the hammer to pry open the door of the first house. Warden called 911 to report that a heavyset male wearing shorts and a gray sweatshirt was breaking into homes. Upon police arrival shortly thereafter, Reed ran from the first house and into the road, forcing a car to stop abruptly; and fled down an alley.

Officer Matthew Tesreau followed Reed on foot, responding to reports of Reed's location. Reed began running when he saw Officer Tesreau, dressed in uniform, despite orders to stop. Officer Tesreau caught up with Reed and ordered him at gunpoint to stop because he was under arrest. Reed complied, and Officer Tesreau holstered his gun and took out his taser. When Reed refused to follow Officer Tesreau's order to get on the ground, Officer Tesreau deployed his taser multiple times.

Officer Tesreau waited for backup officers before placing Reed under arrest. The officers took Reed back to the scene of the robbery, where Warden identified him. Officers

---

[1] The Court's recitation of the facts is taken from the decision of the Missouri Court of Appeals on direct review. (Doc. 15-5 at 3-6.)

found a hammer just inside the doorway to the first house, and the owner noted that the door had been forced open and that the hammer did not belong to him. The owner of the second house also noted that his door had been damaged, and identified the hammer as his. Neither owner had given Reed permission to enter the residences.

The jury found Reed guilty of burglary in the second degree, resisting arrest, stealing under $500, trespassing in the first degree, and property damage in the second degree. Reed moved for judgment of acquittal or for a new trial, asserting that the State had not met its burden of proving each and every element of its case. The court denied Reed's motion for a new trial, after holding multiple evidentiary hearings.

### III. Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in *Williams v. Collins*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case

4

differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

### IV. Petitioner's Claims

Reed raises ten grounds for relief. The undersigned will discuss these claims in turn.

### A. Ground One

In his first ground for relief, Reed argues that the evidence was insufficient to sustain his conviction of resisting arrest by fleeing. He argues that the State did not prove that Officer Tesreau was trying to make an arrest of Reed.

The statutory language of the criminal offense of which Reed was convicted provides, in relevant part, as follows:

> A person commits the offense of resisting or interfering with arrest, detention, or stop if he or she knows or reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or stop an individual or vehicle, and for the purpose of preventing the officer from effecting the arrest, stop or detention, he or she:
> (1) Resists the arrest, stop or detention of such person by using or threatening the use of violence or physical force or by fleeing from such officer..

Mo. Rev. Stat. § 575.150.

Reed raised this claim in his direct appeal. The Missouri Court of Appeals held as follows:

5

> Contrary to Reed's assertion on appeal, Officer Tesreau did testify at trial that he informed Reed he was under arrest before Reed fled. Specifically, he testified on cross-examination that before he tased Reed for the first time he 'advised [Reed] to get down on the ground, that he was under arrest, which [Reed] did not, he did not comply to [sic].' (Trial Transcript at p. 281.) Accepting this testimony as true, as we must, there was sufficient evidence from which a reasonable juror might have found Reed guilty of resisting arrest. Id. Namely, the evidence established that Officer Tesreau was attempting to arrest Reed, that Officer Tesreau—while in uniform—shouted for Reed to stop because he was under arrest, that Reed fled both when the police first arrived and also from Officer Tesreau, and that during Reed's initial flight he ran into the road, forcing a passing car to stop abruptly in a manner that could have caused the driver injury. State v. Daws, 311 S.W.3d 806, 808-09 (Mo. banc 2010) (five elements of resisting arrest are: (1) law enforcement officer is making or attempting to make a lawful arrest or stop; (2) defendant knew of or reasonably should have known of law enforcement officer's lawful attempt; (3) defendant resists by fleeing; (4) defendant resisted for purpose of thwarting law enforcement officer's lawful attempt to arrest or stop by threat of violence or by fleeing; and (5) defendant fled in manner that created substantial risk of serious physical injury to another).

(Doc. 15-5 at 7-8.)

In reviewing a challenge to a sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). *Accord Parker v. Matthews*, 567 U.S. 37, 43 (2012); *Cavazos v. Smith*, 565 U.S. 1, 7 (2011). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319. State law determines the specific elements of the crime at issue. *Fenske v. Thalacker*, 60 F.3d 478 (8th Cir. 1995). The federal habeas court's scope of review is very limited. The Court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state" and "must defer to that resolution." *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003) (quotation marks omitted). Furthermore, "a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was

objectively unreasonable." *Parker*, 567 U.S. at 43 (quotation marks omitted).

The Missouri Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Consistent with *Jackson v. Virginia*, the Missouri Court examined whether the testimony presented at trial established the elements of the crime as defined under Missouri law. The only element challenged by Reed is that Officer Tesreau was attempting to make an arrest. The Missouri Court of Appeals cited Officer Tesreau's testimony that he advised Reed to get down on the ground and that he was under arrest. (Doc. 15-1 at 74.) The undersigned's review of the record shows that the State court's determination of the facts is supported by the record.

Thus, Ground One is denied.

**B. Ground Two**

In his second ground for relief, Reed argues that the evidence at trial was insufficient to show he committed second-degree burglary or the misdemeanor charges of trespassing, stealing, and property damage, because the State's eyewitness did not make an in-court identification.

Reed raised this claim in his direct appeal. The Missouri Court of Appeals held as follows:

> The crux of Reed's argument appears to be that because Warden did not make an in-court identification of Reed that the State per se failed to produce sufficient evidence to establish beyond a reasonable doubt that Reed was the person who entered the first and second houses. An in-court identification, however, is not mandatory where the witness's total testimony sufficiently identifies the defendant as the person who committed the crime. *State v. Gaines*, 316 S.W.3d 440, 455 (Mo. App. W.D. 2010) (in-court identification not necessary when totality of evidence shows that defendant was person who committed crime); *State v. Baker*, 23 S.W.3d 702, 708 (Mo. App. E.D. 2000) (there was sufficient evidence to identify defendant as accused, even where victim did not physically indicate defendant's presence in courtroom).
> Here, trial testimony established that Warden witnessed "the defendant" attempt to enter house one, enter house two, leave house two with a hammer, and

7

> then use that hammer to gain entry to house one. The owners of the first and second houses both testified to damage to their doors, and both testified that they had not given Reed permission to enter. The owner of the first house testified that the hammer found in his house did not belong to him, and the owner of the second house testified that the hammer found in the first house belonged to him. After Reed was arrested, Warden identified him at the scene as the person he had seen entering the houses. At trial, Warden identified the clothes Reed was wearing when he was arrested, as matching the clothes worn by the burglar. Also at trial, Officer Tesreau made an in-court identification of Reed as the man he arrested on August 25, 2008, and testified that after Reed's arrest he was returned to the crime scene for Warden to identify
>
> Even without an in-court identification by Warden, the record and inferences sufficiently established that Reed was the person who committed the crimes. *Gaines*, 316 S.W.3d at 455; *Baker*, 23 S.W.3d at 708. Under our standard of review, there was sufficient evidence for a jury to have found Reed guilty of burglary, stealing, trespassing, and property damage. *Gibbs*, 306 S.W.3d at 181.

(Doc. 15-5 at 10-11.)

The appellate court concluded that the record and inferences sufficiently established that Reed was the person who committed the crimes. Based on the Court's review of the record from the trial, these findings and conclusions are not objectively unreasonable. As such, Reed is not entitled to relief on Ground Two.

**C.  Ground Three**

Reed argues that trial counsel was ineffective for stipulating with the State that the 911 call made by Jerry Warden did not need to be played for the jury in its entirety. Specifically, Reed contends that the un-played portion of the 911 call contradicted Warden's trial testimony, and supported the defense theory that Reed never entered the first house.

The portion of the 911 call admitted into evidence at trial contained the following conversation between Warden and the dispatcher:

> [Dispatcher]: Can I help you?
> [Warden]: Yes, good morning. My name is Jerry Warden at 2707 McNair and a guy is breaking into a house right across the street.
> [Dispatcher]: Okay. What's the address?

8

> [Warden]: It would be 2704 McNair, M-C-N-A-I-R.
> [Dispatcher]: McNair?
> [Warden]: Yeah.
> ***
> [Warden]: …He went into the house next door and got some tools and he's over at the house now.
> [Dispatcher]: And he's breaking in what door?
> [Warden]: 2704.
> [Dispatcher]: I understand. Front door? Back door? Side door?
> [Warden]: Well, it's the front door, actually which is the side of the house.
> [Dispatcher]: Okay. So kicking in the front door on the side of the house?
> [Warden]: Yes.
> [Dispatcher]: Okay. He also broke into which house?
> [Warden]: Let's see, it would be probably 2406, or 08. I can't see the numbers from here. Let me see, he's just going to the back door now.

(Doc. 15-1 at 65.) The State stopped the recording at this point, and informed the jury that the "next information is just [Warden's] pedigree information." *Id.*

In the un-played portion of the 911 call,[2] the dispatcher obtained Warden's contact information and dispatched to police officers the information Warden provided about the incident. Warden then confirmed that Reed went around to the back of the house, and the dispatcher asked Warden if he could see him. Warden responded, "No, I don't see. He might be in the house." The dispatcher told Warden that the police might call him for more information and terminated the call.

At trial, Warden testified that he saw Reed approach the front door of the first house, then walked to the back of the first house, at which time Warden could no longer see him. (Doc. 15-1 at 55.) After being behind the house for "a minute or so," Reed came back around the side of the house. *Id.* Warden testified that he saw Reed break into the first house and later "come running out of the front of the house into the street" when the police arrived." *Id.* at 56-57.

Reed raised this claim in the post-conviction proceedings. The motion court rejected

---

[2]The Court's summary of the un-played portion of the call is taken from the decision of the Missouri Court of Appeals. (Doc. 15-10 at 8-9.)

9

Reed's claim, finding the content of the un-played portion of the tape was not significantly different from Warden's trial testimony, and would not have affected the outcome of the trial. (Doc. 15-7 at 154.) The Missouri Court of Appeals held as follows, in relevant part:

> Contrary to Movant's assertion, the un-played portion of the 911 telephone call neither contradicted nor added to Mr. Warden's testimony. In the un-played portion of the call, Mr. Warden confirmed that Movant went around to the back of the house and informed the dispatcher that he could not see Movant and Movant might have entered the house. Likewise, at trial, Mr. Warden testified that he told the 911 dispatcher that Movant went to the back of the house and that he "lost sight" of him. Thus, the information contained in the un-played portion of the 911 telephone call is consistent with Mr. Warden's testimony at trial.
> Additionally, the record refutes Movant's contention that the un-played portion of the 911 call supported the defense theory that Movant never entered the first house. In the un-played portion of the 911 call, Mr. Warden informed the dispatcher that he could not see Movant and "he might be in the house." At trial, Mr. Warden testified that after Movant went to the back of the house, returned to the front of the house. He testified that Movant entered the front door and that when the police arrived, he saw Movant "running out of the front of the house[.]" The un-played 911 call does not demonstrate that Movant did not enter the house, but rather ends before Movant returned to and entered the front of the house.

(Doc. 15-10 at 9.)

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, a habeas petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

"Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citations omitted). To show prejudice, the petitioner must show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When, as here, an ineffective assistance claim has been addressed by the State court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *See Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citation omitted). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

Here, the State appellate court properly applied *Strickland*. The Missouri Court of Appeals found that the un-played portion of the tape was consistent with Warden's trial testimony that he saw Reed approach the first house, then walk around to the back where he lost sight of him. This finding is supported by the record. Reed cannot show that he was prejudiced due to counsel's failure to introduce cumulative evidence. Thus, Ground Three will be denied.

**D.      Ground Four**

In his fourth ground for relief, Reed argues that the State violated *Brady* by failing to provide the defense with tape-recorded communications between a police dispatcher and Officer Tesreau. He contends that this tape would show that Officer Tesreau did not chase after Reed, and would also undermine Warden's credibility as a witness.

At trial, Officer Tesreau testified that, after arriving at the first house, he received information that the suspect had fled and was headed north. (Doc. 15-1 at 70.) Officer Tesreau stated that he then "conducted a foot patrol in the area." *Id.* Officer Tesreau testified that he was "walking around the neighborhood," when he received additional information from someone in

11

the neighborhood. *Id.*

Warden testified that, when he saw Reed flee down an alley, he yelled out to "one of" the two officers that had pulled up. *Id.* at 57. Warden stated that "one of the officers" then "ran down the alley." *Id.*

Reed raised this claim in the post-conviction proceedings. The motion court found that the tape showed that Officer Tesreau was breathing heavily, therefore supporting the State's theory that he chased Reed on foot. (Doc. 15-7 at 156.) The Missouri Court of Appeals held that the record refutes Reed's allegation that the dispatch recording is inconsistent with Warden's testimony. (Doc. 15-1- at 11.) The court stated that Warden "did not testify that he told Officer Tesreau that Movant ran down an alley," nor did he testify that Officer Tesreau was the officer who ran down the alley." *Id.* As such, the dispatch recording would not have impeached Warden's testimony. *Id.* The court also rejected Reed's claim that the recording would have undermined Officer Tesreau's testimony because the communication suggested that Officer Tesreau was walking around the area, rather than chasing Reed. *Id.* The court held that "the communication between Officer Tesreau and the dispatcher in which Officer Tesreau is 'walking around the area' is consistent with his testimony regarding his initial pursuit of" Reed. *Id.* at 12.

"To establish that a *Brady* violation undermines a conviction, a convicted defendant must make each of three showings: (1) the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching, (2) the state suppressed the evidence, either willfully or inadvertently, and (3) prejudice ensued." *Skinner v. Switzer*, 562 U.S. 521, 536 (2011).

The State courts determined that the record refuted Reed's claim that the dispatch recording was favorable to him as impeachment evidence. This finding is supported by the record. Reed is unable to demonstrate a *Brady* violation if the recording was not favorable to the defense. Because the State court's determination was not based upon an "unreasonable

determination of the facts in light of the evidence" or "an unreasonable application of, clearly established Federal law," Ground Four will be denied.

**E.     Ground Five**

In his fifth ground for relief, Reed argues that the Missouri Supreme Court erred in denying his state petition for habeas corpus under Missouri Supreme Court Rule 91 without stating the reasons for its decision. Reed believes that he "demonstrated cause and prejudice" to overcome the State's doctrine of procedural default. (Doc. 1-1 at 16.)

The United States Supreme Court has held that "'federal habeas corpus relief does not lie for errors of state law" and that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) and citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)).

Reed's claim challenging the opinion of the Missouri Supreme Court is not cognizable in the instant federal habeas petition. Thus, Ground Five will be denied.

**F.     Ground Six**

In his sixth ground for relief, Reed argues that he is entitled to habeas relief due to the "cumulative effect of all the alleged errors." (Doc. 1-1 at 16.)

The Eighth Circuit has held "a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006) (*quoting Hall v. Luebbers*, 296 F.3d 685, 692 (8th Cir. 2002)). Thus, Ground Six is not cognizable in this action and will be denied.

## G. Grounds Seven through Ten

In grounds seven through ten, Reed raises ineffective assistance of trial counsel claims that he failed to raise during the state post-conviction proceedings. Respondent argues that these claims are, therefore, procedurally defaulted.

Reed does not contest that he failed to raise these claims before the state courts. Instead, Reed argues that his procedural default should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012), because post-conviction counsel was ineffective in failing to raise the claims.

The Supreme Court held in *Martinez* that:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial review of collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17.

To satisfy *Martinez*, Reed must show that his counsel in the initial post-conviction proceeding was ineffective under the standards of *Strickland*. *Id*. at 14. He must also show "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit." *Id*. As for what amounts to a "substantial" claim, the Supreme Court in *Martinez* explained "that the prisoner must demonstrate that the claim has some merit. *Id*. (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003) (describing the standards for certificates of appealability to issue).) Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if "a petitioner has made a substantial showing of the denial of a constitutional right." "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).

14

The Court will, therefore, examine the underlying ineffective assistance of trial counsel claims asserted in grounds seven through ten to determine if they have "some merit" to excuse Reed's procedural default.

**Ground Seven**

In his seventh ground for relief, Reed argues that trial counsel was ineffective for failing to request new counsel at a post-trial hearing.

After Reed was found guilty, he alleged that trial counsel was ineffective for failing to call Detective Leonard Blansitt and Officer John Pierce as witnesses. The trial court heard testimony from both witnesses in order to determine whether there was probable cause to believe Reed had received ineffective assistance of counsel. (Doc. 15-1 at 94-113.) The court found that these witnesses did not support Reed's defense theory and provided no "meaningful contradiction" of Officer Tesreau's trial testimony. *Id.* at 111. The court concluded that there was no probable cause to believe Reed had received ineffective assistance of trial counsel. *Id.* at 113.

Reed argues that trial counsel had a conflict of interest because the testimony at the hearing could have established that trial counsel was ineffective. Reed's claim lacks merit. The purpose of the post-trial hearing was simply for the trial court to determine if there was probable cause to believe that Reed had received ineffective assistance of counsel. The hearing did not affect Reed's ability to litigate his ineffective assistance of trial counsel claims in the post-conviction proceedings. Reed is unable to demonstrate prejudice under *Strickland*.

Ground Seven does not have "some merit" as required by *Martinez*. Reed has not, therefore, established cause to avoid the procedural bar preventing consideration of the merits of this claim.

Accordingly, Ground Seven will be denied.

**Ground Eight**

In his eighth ground for relief, Reed argues that trial counsel was ineffective for failing to object to the prosecutor's use of an evidence envelope during his cross-examination of Officer Pierce at a post-trial hearing. The envelope indicated Officer Pierce had packaged and labeled the evidence seized from the scene. Reed argues this is inconsistent with Officer Tesreau's testimony at trial that he handled the evidence.

As previously discussed, the purpose of the post-trial hearing at issue was to determine if there was probable cause for Reed's ineffective assistance of trial counsel claims. If counsel had objected to the prosecutor's use of the evidence envelope, it would not have changed the outcome of that proceeding, nor would it have affected the outcome of the trial. Ground Eight does not have "some merit" as required by *Martinez*. Thus, Reed has not established cause to avoid the procedural bar of this claim. Ground Eight will be denied.

**Ground Nine**

In his ninth ground for relief, Reed argues that trial counsel was ineffective for failing to object to the admission of Reed's clothes and the hammer used in the burglary. Reed contends that Officer Tesreau falsely testified that he seized these items, when it was actually Officer Pierce who seized them.

Reed's claim lacks merit. First, the record does not establish that Tesreau falsely testified. Officer Tesreau described the seizure process generally, testifying that "we take the clothes for burglaries, to maybe get DNA off of it," place it in an evidence bag, and transport it to the department lab for analysis. (Doc. 15-1 at 72.) He testified that, in the instant case, the evidence "was seized and taken to the lab." *Id.* When later asked if he seized and packaged the hammer in this case, Officer Tesreau testified "Yes, sir, I did." *Id.* at 73. After trial, Officer Pierce testified that he collected evidence from Officer Tesreau and processed it. Although Officer Tesreau's

16

testimony may be unclear as to whether he personally bagged, sealed, and delivered all of the seized evidence or if other officers assisted in this process, it is not inconsistent with Officer Pierce's testimony.

Further, even if counsel had objected to the admission of the evidence on the basis of the chain of custody, this would not have affected the outcome of the trial. At most, the objection would have been sustained, and the State would have introduced additional evidence to clarify the chain of custody. Thus, Ground Nine does not have "some merit" as required by *Martinez*, and Reed cannot established cause to avoid the procedural bar of this claim. Ground Nine will be denied.

**Ground Ten**

In his tenth ground for relief, Reed argues that trial counsel was ineffective for failing to impeach Officer Tesreau about perceived inconsistencies concerning the evidentiary chain of custody involved with the clothes and hammer seized during the investigation. The Court has found that Officer Tesreau's testimony was consistent with the testimony of Officer Pierce. As such, an effort to impeach Officer Tesreau regarding the chain of custody would not have led to the exclusion of the evidence. Thus, Ground Ten does not have "some merit" as required by *Martinez*, and will be denied.

## V. Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserved further proceedings. *See Cox*, 133 F.3d at 569. In this case, Reed has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that

17

the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## **ORDER**

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. §2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED and DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

s/Abbie Crites-Leoni  
ABBIE CRITES-LEONI  
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of March, 2019.